Number 16 1526 CF Crespe Crespe like critters right silicon against silicon labs whenever you're ready mr. Smith may please the court we'd reserved two we asked the court to reverse the board's decision in this case because improperly construed the term input RF signal in the 585 patent and as a result of that improper construction it resulted in improperly interpreting the prior art that it was under consideration the board improperly construed the input RF signal because it relied on a dictionary definition of just the term RF radiofrequency and it ignored in our view the intrinsic record that supported an alternative construction that was actually consistent with the claims in the specification didn't you also have extrinsic evidence that you relied on we had extrinsic evidence in the form of an expert declaration so we had that we did not put forward a separate dictionary definition for the term RF our view is that the term input RF signal should be construed as a unitary unitary term as a whole as opposed to doing what the board did which is it didn't put the words input or signal and it just went right to the dictionary and said what does RF mean and then gave a broad range of frequencies for RF we submit that that type of construction is wrong not only does it go against the claim construction principles that we've been taught for years that you start with the intrinsic record and look at that record and when we presented that record to the board the board said our construction is not without appeal meaning that we actually had some merit to the construction we were proposing because our construction is both is based on the intrinsic record but then discounted it by saying there was one reference in a RF signal said input signal and in parentheses RF and based on that one site said that all of the intrinsic evidence that we cited to that talks about an input RF signal and what we think consistently supports the patent owners construction was all not considered as part of the construction. Can you help me just understand what it means to say it's received at the receiver prior to the processing that takes place after it's received because definitionally it can't be processed by thing that it's coming into until it's in there so you think that it means there has never been any processing of that signal before it arrives? So our contention is that we're talking about a raw signal coming in like a satellite signal a terrestrial signal a cable signal that that is what the 585 patent is trying to accomplish here that you're taking this raw signal coming in. Raw doesn't isn't isn't it in my hearing making it any clearer I mean what what I'm struggling to understand what it either raw means or without processing means something I mean something created that signal and I mean didn't spring without somebody processing something so I'm trying to understand what this means. Right when we refer to processing we're referring to the fact that there are these frequency conversion circuits and so what's happening in the 585 patent is you take in what we're referring to as this external signal and you begin the process of processing it in order to get it to the point where you could show it on a TV and so you start with a external signal such as what's getting beamed down by the satellite or what's coming in through the cable transmission then you have to go through a sequence of changes and it's that sequence of changes that we think is important here because the patent is very clear that there's a difference in the terminology that the claim and specifications using on the one hand they talk about an input RF signal which we say is an external signal that hasn't been processed by the something that has been processed something that has been converted and as a result of this change there needs to be a distinction in the claims in terms of what do these two terms mean the input RF signal is different from the intermediate signal they are two different terms and should be interpreted differently as a result however the board in its construction doesn't have a distinguishing construction instead its construction of encompasses every RF single signal that's described in the patent including an intermediate frequency signal so there's no distinction as a result of the board's construction between an input RF signal and the intermediate frequency signal and we submit that as a result that can't be the right construction these two terms were used very clearly in the specification and claims to mean different things and we think that our construction which the board found to be not without appeal is actually supported pretty well by the intrinsic record and the specification the independent claims talk about the input signal coming into the tuner and then being converted to a different intermediate frequency signal and what in the patent specification talks about the lack of pre-process so the words pre-processing do not appear in terms of a reference to just the fact that that signals pre-process the use of pre-processing we take from the fact that the specification clearly talks about the input RF signal being a signal such as a terrestrial cynical or cable transmission meaning these are signals that would be coming in where they hadn't been processed by a frequency could say specifically that they shouldn't be or cannot be right well I think that it does in the sense that one of the advantages that the 585 patent provides in the specification is it says it can take in signals in any manner and it talks about the fact that specifically can take in these terrestrial signals and satellite signals and those are examples of these signals that are coming in that aren't requiring something else to filter them or to change the frequency of them this is unlike some of the prior art that's been relied upon in this case where you see prior to the 585 patent people having this external hardware that's one of the problems I'm having with your claim construction is it feels like it's driven by the prior and avoiding it as opposed to the actual specification that pre-processing or not I think that the distinction becomes clear when you try to interpret input RF signal and the signal that is the intermediate frequency signal I mean those are different one is clearly processed because the intermediate frequency signal is the one that goes through the conversion that takes place whereas the input RF signal is not and every reference to the input RF signal in the specification is referring to examples of signals that are external that have not been processed and so I think the specification actually is fairly clear that what we're talking about is bringing in this external signal then doing the conversion and then you get to an intermediate frequency signal and so I think the specification actually is much clearer than a Peli would suggest it to mean because there is a clear distinction between these two signals and the only way to make sense of that they're construed reflects the fact that they are different signals meaning one is going through a conversion the other has not gone through a conversion the other one has come in from this terrestrial source and now is coming into the circuitry for purposes of being converted and ultimately demodulated so that a TV can actually display it the dependent claims also support our instruction because the dependent claims talk about the fact that the input RF signal comprise RF signals received from terrestrial broadcast satellite broadcast and cable transmission here again the dependent claims can be looked at as a guide to understanding what the input RF signal is and here it's explicit explicitly indicating that they're coming from an external source and that these are signals the terrestrial satellite and external to what external to the the circuitry that the 585 patent is trying to accomplish meaning receiver that is going to then start the conversion process and I don't remember this so forgive me if I'm just way off basis but is it is once the board got past the claim construction the prior art that they that the board relied on essentially looked inside some box and that there is receiving over here with something coming in but all within the box or something that's that's pretty close your honor so they rely after they get through the claim construction they then take that broad construction and say if you look at the Thompson reference which I believe is the one you're referring to the Thompson reference although it says you've got this satellite signal so what we're calling an external signal satellite signal coming in and then there's something that they claim is then converting that signal into an intermediate frequency signal and then bringing that intermediate frequency signal into the structure that Thompson is describing as their invention and so the conversion is happening sort of outside of view of their invention meaning the conversion of that satellite signal is happening outside of it in some they call it an outside source but the reason that they do it is Thompson isn't concerned about having a unit that can bring in these external signals and be able to take care of them all in one place they're only concerned about what happens after this conversion has taken place and Thompson recognizes that they couldn't bring in sort of the raw satellite signal they need in order for their tuner to be able to work they need to be able to convert that and convert it into an intermediate frequency in order for it to be able to work properly and so when the board looked at Thompson it was easy for them to say well your intermediate frequency signal is an input RF signal because they had defined the input RF signal so broadly as to encompass almost any RF signal you could imagine and so as a result when they looked at the intermediate frequency that actually goes into the Thompson circuitry they said well it looks like it has frequency that fits within that range and therefore it must be an input RF frequency our view is that that would be improper because it is taking input RF frequency and giving it such an unreasonably broad definition that it's indistinguishable from any other RF frequency signal that would be out there including every single one that would be listed in 585 patent there'd be absolutely no distinction and there'd be no reason for the claim drafters to call something an input RF signal if it in fact was any signal because they knew how to distinguish between the input signal and the intermediate suppose you could have written your claim is receiving a signal from an antenna and then inputting said received signal into you know you know the converter to down convert to an intermediate signal I mean that would have been perhaps a clearer way of perhaps I mean I think they did the best they could by using input RF signal consistently throughout the patent and given examples of what they consider to be an input RF signal so they're just examples aren't they I mean an RF signal is a term of art so input our signal is not a term of art we're not in but RF and RF signals and there's no dispute here that RF is a radio frequency signal I mean that's there's no dispute about that it's just that in this patent the inventors use the term input RF signal consistently and they gave examples of what they considered it to be and they have dependent claims that talk about what the source of it is and so all of the intrinsic record supports the idea that we're talking about these terrestrial signals I see that I'm it's your two minutes okay that they're taking this signal and they're then going to be converting this signal and so I think that consistency supports it and I think the board recognized that consistency although it decided to go with a dictionary first definition for this term thank you I think what we've heard in this case is that the patent owner in this case wants this court as it did the board to ascribe a unique definition to treat input RF signal as if it were a coined term rather than just a concatenation of relatively well-known terms input and RF signal can you talk about the other side's argument that when you look at the claim you're doing a claim construction of the claim there's a term called intermediate signal in the claim and then also an input RF signal and so as a matter of claim construction different words different terms that really ought to mean different things and so there's some kind of misunderstanding to treat input RF signal and equate it with an intermediate frequency signal yes your honor there's no consistency between the board's construction of our our input RF signal and the claims use of intermediate frequency there was no separate dispute on the meaning of intermediate frequency or IF signal and that's largely was driven by some concurrent litigation and so the patent or never took a position in the case about what intermediate frequency signal means but the broad and the broadest reasonable interpretation of that in light of the specification is simply a signal with an intermediate frequency and there's nothing inconsistent with saying that the input RF signal is a signal in the RF spectrum and that the intermediate frequency is a signal that has an intermediate frequency that differs from that signal and in fact it actually supports the board's construction because the the tuner the frequency conversion circuit that that converts the input RF signal to the intermediate frequency is focused on the frequency changing the frequency of that input signal to the intermediate frequency so actually the claim language and the specifications support the RF signal means a signal in the input signal that's in the RF spectrum the specification clearly defines RF as radio frequency and the board naturally just look to the IEEE a well-known dictionary to see what that spectrum is and there's no dispute that the spectrum that the board chose falls within the edges and say it's broader or but it's immaterial to this dispute because Thompson clearly falls within the range that the board selected this is not a case like you know Texas Digital or some of the others where the board just reached out and grabbed like Webster's dictionary to find the broadest reasonable the broadest construction that it could it went to a well-respected technical dictionary can found a technical is the board's position is this a fair I guess implication or set of consequences of the board's position the board's claim construction here says there have to be three signals one starting one ending or doesn't have to be ending and something in the middle or so there's a little window with three signals or a signal wouldn't be in three shapes and any set of circuits in which we can move that window around and find three that would cover this as long as they're you know doing doing the other things well I guess I would disagree slightly because clearly if the input within the quite broad range so I guess I'm having a little trouble with your hypothetical your honor I want to be responsive to that there has to be an input RF signal has to be a signal it's input that's in the RF spectrum there has to be a circuit that converts the frequency of that signal to an intermediate for something else right and then some processing gets done and it produces baseband signals right okay so that's what makes that what's that's what makes the middle one intermediate yes exactly so there's nothing inconsistent with saying that the claim requires an intermediate frequency signal and an input signal that has a different range than that intermediate frequency or and you have to understand that there was a lot of context in this IPR as you might imagine and the petitioner put on evidence that it is well known in the art to use cable boxes to use satellite boxes that would take a what the the patent first was a broadcast signal and that's the signal that comes out of the medium the original source that's transmitted and I've referred the panel to column one line 23 from 26 where it says the television or video recorder includes a television signal receiver to receive terrestrial broadcast cable television or satellite broadcast television signal so actually the whole factual predicate to their argument that the that the patent universally uses the term input RF signals to mean a signal that originates from the source is actually wrong the patent actually refers to that as a broadcast signal as a transmitted signal and and when it talks and it's not surprising that the the patent uses the term consistently input RF signal so much because that's used in the claims 20 times so it's not surprising that the same term is used but it's not the term that refers to the broadcast signal and I know I've lost your question that's right no it seems to what I keep thinking when I read this claim is it starts with receiving yes and the starting point could be I'm imagining a set of circuits that has I'm gonna make up this number 23,000 components right and you could start that the receiving at at component number 17,000 as long as you somewhere after that had an intermediate and something incorrect and that's what I mean by moving this three-part window anywhere in the circuit and they have a vision of something more discreet with a well-defined entry that's right and and that's what I'm it seems to me what the board has done is said we're gonna take this claim language literally receiving means starting anywhere anywhere at all as long as we have the three pieces that's correct that's what the claim says and that's why it defines it as an input signal it doesn't it's not concerned about what happened upstream of that and we actually put in evidence and I would cite the the panel to a 2779 where petitioners expert dr. Holbrook talks about how how televisions were used in practice in the industry can the RF come over a wire yes it can the cable yeah just depends on the frequency yes but what's interesting your honor is that we hear from the patent owner that this signal can't be pre-processed and yet it can be a satellite signal that goes apparently directly into the television well that doesn't exist and in fact the patent itself makes clear and this is the concern about relying on and use that as a basis for lexicography if you look to column 3 of the patents beginning at line 46 it says the tell and this is talking about now the preferred embodiment the television receiver 50 receives input RF signals such as those received on an antenna or a cable line on input terminal 52 what's missing from there a satellite and you know why because a satellite requires pre-processing it requires a satellite dish to receive that signal televisions don't receive satellite signals and this is if you look at a six to one seven there's a description of a typical you know prior arts as was known in the art at the time configuration of a television that was used as in conjunction with a satellite but the signal that's input to the television it basically spoofs the television receiver into thinking it's receiving a terrestrial broadcast signal by basically mapping that broadcast the frequency of that broadcast signal down to a frequency that it can process it can recognize but that doesn't mean that it's not an input RF signal because that same input as we all know can be connected directly to an antenna so if the signal coming off the antenna qualifies as an input RF signal then certainly the signal that's coming out of the box that's input to that television also qualifies as an input RF signal that's basically all that the board found and there's evidence in the record to support that I didn't hear anything about the other two grounds I take that to mean that the other two issues I take that to mean that the patent under concedes that they waive those and I would just there was some briefing in the reply that they relied on Navajo Nation versus United States is sort of setting the framework for waiver and I just want to point the court to in Ray Watts 354 F third 1362 where this more than just putting the the element at issue that the patent owner has to make the factual argument that it's making on appeal to the board in order to develop that record and in this case in this case the patent owner didn't make either the argument with respect to the plurality of the modulators or to the digital to analog converter and so I would just like to point the boards or the panels attention to their patent owner response with respect to the plurality of demodulators and it's quite clear this is on page a 1078 of the digital demodulator only produced video output it did not produce analog okay they made no argument with respect to the analog demodulator at all and now here on appeal that's their only arguments and of course the record now is silent as a result and so they're seizing on that silence to try to actually misconstrue the courts claim construction the court was quite clear that it was just clarifying its construction that it was broad enough to embrace a single signal that encoded both video and audio that's why I use the permissive word may and now on appeal the patent owner is arguing that it must mean must but the problem with that is that it's belied by its own specification that would actually exclude the one and only embodiment that they described in their patent which is an analog demodulator that produces both set with produces separate video and audio which is exactly what Thompson described the same is true on the digital to analog converter they the only argument that they made was that Kurth couldn't be combined because Kurth was prior art from a telephone telephone and Thompson related to a television and because of the speeds that were involved be possible to combine that and that's at a 1099 through one one now they're making a completely separate arguments that the I guess it's a little bit hard to understand but basically that that the digital to analog that you have to demodulate the digital to analog converter or the digital signal again the combination that the board relied upon is exactly the same combination that's described in column 5 line 54 through 58 which is a a digital to analog converter that's interposed between the digital signal processor and the in an analog demodulator so again even if even if the panel finds that it's it hasn't been waived it's just wrong on the facts and unless there's any other questions I'll see you thank you very much mr. Smith two minutes input RF signal I think it's important to remember that nothing in the claims in the specification or anywhere else in the record except for the dictionary definition and the arguments that we've heard talks about construing the RF in the input RF signal as the frequency range meaning the patent doesn't talk about a frequency range for the input RF signal and so the starting point for the board's construction was looking at a dictionary definition and taking that dictionary definition which is extraordinarily broad and it even says in the dictionary said it's roughly this huge range of frequencies and saying that's the starting point for our conclusion that the input RFC input RF signal is this broad construction that can include any of these are frequencies we submit that that's the wrong starting place the starting place should be looking at the intrinsic record looking at what the intrinsic record teaches us about the input RF signal and I think you've heard some arguments that I would disagree with with regards to the idea that it can't be a broadcast signal independent claims specifically call out broadcast signals as being input RF signals and so those are explicitly stated as being input RF signals within the patent itself just the way the specification calls out and specifically indicates that the input RF signal has terrestrial signals can have the cable signals to it and the only way to reconcile these terms the input RF signal and the intermediate signal in these claims is to have a construction where they're not the same and the board's construction the way it is articulated would include not only the IF signal within the claim but every other signal that's described throughout the entire patent because the broad construction that they've given would cover any signal and so it would mean any signal can come into this when that is not what the patentee was trying to articulate is this idea that you can bring in these terrestrial signals and then do the conversion which is different very different what Thompson is saying Thompson is actually saying we can't do that we're not able to bring it in and we need to have something external to our system that can make this conversion and then be able to filter thank you very much thanks both you